Bentley Kassal, J.
The issue here is whether defendant restaurant by permitting an individual to park patrons’ cars thereby held him out as its “employee” for such purposes. Admittedly, this individual, one Buster Douglas, is not its employee in the usual sense but with the knowledge of defendant, he did station himself in front of its restaurant, wore a doorman’s uniform and had been parking its customers’ autos. The parties stipulated that if he were held to be defendant’s employee, this created a bailment between the parties.
This question was submitted to me on the basis of an agreed statement of facts, consisting essentially of the following information :
On April 20, 1968, at about 10:00 p.m., plaintiff drove his 1967 Cadillac Coupe de Ville to the door of the Directoire Restaurant at 160 East 48th Street in Manhattan. Standing in front of the door was Buster Douglas, dressed in a self-supplied uniform, comprised of a regular doorman’s cap and matching jacket. Plaintiff gave the keys to his vehicle to Douglas and requested that he park the car. He gave Douglas a $1 tip and received a claim check. Plaintiff then entered defendant’s restaurant, remained there for approximately 45 minutes and when he departed, Douglas was unable to locate the car which was never returned to plaintiff.
At the time of this occurrence, the restaurant had been open for only nine days, during which time plaintiff had patronized the restaurant on at least one prior occasion.
Defendant did not maintain any sign at its entrance or elsewhere that it would provide parking for its customers (nor, apparently, any sign warning to the contrary).
Buster Douglas parked cars for customers of defendant’s restaurant and at least three or four other restaurants on the block. He stationed himself in front of each restaurant during the course of an evening and was so engaged during the evening of April 20,1968. Defendant clearly knew of and did not object to Douglas’ activities outside its restaurant. Defendant’s witness testified at an examination before trial: “ Q. Did anybody stand outside your restaurant in any capacity whatsoever?
‘ ‘ A. There was a man out there parking cars for the block, but he was in no way connected with us or anything like that. He parked cars for the Tamburlaine and also for the Chateau Madrid, Nepentha and a few places around the block.
‘ ‘ Q. Did you know that this gentlemen was standing outside your restaurant?
“A. Yes, I knew he was there.
*421 “ Q. How did you lmow that he was standing outside your restaurant?
“ A. Well, I knew the man’s face because I used to work in a club on 55th Street and he was there. When we first opened up here, we didn’t know if we would have a doorman or have parking facilities or what we were going to do at that time. We just let it hang and I told this Buster, Buster was his name, that you are a free agent and you do whatever you want to do. I am tending bar in the place and what you do in the street is up to you, I will not stop you, but we are not hiring you or anything like that, because at that time, we didn’t know what we were going to use the parking lot or get a doorman and put on a uniform or what.”
These facts establish to my satisfaction that, although Douglas was not an actual employee of the restaurant, defendant held him out as its authorized agent or “ employee ” for the purpose of parking its customers’ cars, by expressly consenting to his standing, in uniform, in front of its door to receive customers, to park their cars and issue receipts therefor — which services were rendered without charge to the restaurant’s customers, except for any gratuity paid to Douglas. Clearly, under these circumstances, apparent authority has been shown and Douglas acted within the scope of this authority.
Plaintiff was justified in assuming that Douglas represented the restaurant in providing his services and that the restaurant had placed him there for the convenience of its customers. A restauranteur knows that this is the impression created by allowing a uniformed attendant to so act. Facility in parking is often a critical consideration for a motorist in selecting a restaurant in midtown Manhattan, and the Directoire was keenly aware of this fact as evidenced by its testimony that the management was looking into various other possibilities for solving customers’ parking problems.
There was no suitable disclaimer posted outside the restaurant that it had no parking facilities or that entrusting one’s car to any person was at the driver’s risk. It is doubtful that any prudent driver would entrust his car to a strange person on the street, if he thought that the individual had no authorization from the restaurant or club or had no connection with it, but was merely an independent operator with questionable financial responsibility.
The fact that Douglas received no compensation directly from defendant is not material. Each party derived a benefit from the arrangement — Douglas being willing to work for gratui *422 ties from customers, and the defendant, at no cost to itself, presenting the appearance of providing the convenience of free parking and doorman services to its patrons. In any case, whatever private arrangements existed between the restaurant and Douglas were never disclosed to the customers. (Potomac Ins. Co. v. Donovan, 274 App. Div. 666.)
Even if such person did perform these services for several restaurants, it does not automatically follow that he is a freelance entrepreneur, since a shared employee working for other small or moderately sized restaurants in the area would seem a reasonable arrangement, in no way negating the authority of the attendant to act as doorman and receive cars for any one of these places individually.
The case most analogous to the instant one is Klotz v. El Morocco Int. (56 Misc 2d 319, revd. on other grounds 63 Mise 2d 489). This case similarly involved the theft of a car parked by a uniformed individual standing in front of defendant’s restaurant who, although not employed by it, parked vehicles for its patrons with the restaurant’s knowledge and consent. Defendant herein attempts to distinguish this case principally upon the ground that the parties in El Morocco stipulated that the “doorman” was an agent or employee of the defendant acting within the scope of his authority. However, Judge Fein made an express finding to that effect (56 Misc 2d 319, 323, supra): “ there was sufficient evidence in plaintiff’s case on which to find Di Giovanni, the man in the uniform, was acting within the scope of his authority as agent of defendant and further (p. 324): “ Di Giovanni’s testimony added little except that it more firmly established the fact of his agency, finally conceded by defendant’s stipulation at the close of the case.” Defendant here also points to the fact that Di Giovanni placed patrons’ car keys on a rack inside El Morocco; however, .this is only one fact to be considered in finding a bailment and is, to me, more relevant to the issue of the degree of care exercised, upon which the Appellate Term reversed the lower court’s decision.
Defendant herein relies with equal weight upon the case of Piliero v. Allstate Ins. Co. (12 A D 2d 130) which appears to reach the opposite conclusion on the basis of 1 ‘ indistinguishable ” facts. It is not the facts, however, but the issue of the overriding public policy considerations, that must be distinguished in the Piliero case.
This was an action for a declaratory judgment concerning the obligation of an insurer to defend in an accident case. The *423 insured’s auto was involved in an accident with third parties while the parking lot attendant was returning it to him near the lot exit. The insurer sought to disclaim coverage of this attendant on the basis of a policy provision excluding from coverage those “ employed in or operating an automobile business ”. “ Automobile business ” was defined to include a “ public parking place ”. The parking lot there was for the sole use of patrons of Tufaro’s Restaurant and Bakery and the attendant, who was otherwise a full-time printer during the day, was a voluntary and unpaid worker who received no compensation from the restaurant although he did receive tips from patrons. The court held that such a person was not “ employed in ” or “ operating ” an “ automobile business ” or a “ public parking place ” within the exclusory clause of the automobile owner’s liability policy. In holding that the ‘£ doorman ’ ’ was covered by the policy’s benefits, the court stated {supra, p. 134): “ Here, the public interest in regulating hazardous uses of property is not involved. If there be any public interest at all, it would be to preserve the insurance protection for those injured in an automobile accident; and that interest would require strict construction of an exclusion clause so as to limit its exclusionary scope.”
It is thus my finding that a bailment for mutual benefit existed and the defendant was required to exercise due care for plaintiff’s automobile.
When defendant’s agent failed to produce plaintiff’s automobile, a presumption of negligence arose which now requires defendant to come forward with a sufficient explanation to rebut this presumption. (Fidelity & Guar. Ins. Corp. v. Ballon, 280 App. Div. 373.)
It has been further stipulated by the parties’ attorneys that upon such finding by the court, the matter should be set down for trial on the issues of due care and of damages.
Accordingly, I am setting down this matter for trial on these issues, to be held in Part 44, on June 1, 1972.